REQUESTED BY: Senator Vard Johnson Nebraska State Legislature 2108 State Capitol Lincoln, Nebraska 68509
Dear Senator Johnson:
The following is our opinion as to the constitutional validity of Nebraska's legislative and congressional redistricting plan given the recent decisions of the United States Supreme Court in the cases of Karcher et al. v.Daggett et al., 51 U.S.L.W. 4854 and Brown et al. v.Thomson et al., 51 U.S.L.W. 4883.
Brown, supra, concerned the Wyoming legislature's redistricting plan for that state's House of Representatives, and Karcher, supra, concerned New Jersey's reapportionment plan for its congressional districts. At the outset, it should be noted that the standards applicable to redistricting plans are entirely different in the case of a state legislative redistricting plan than they are for state legislatures redistricting plan for United States congressional districts. State legislative redistricting plans are susceptible to scrutiny under the Equal Protection Clause of the Fourteenth Amendment, while United States congressional redistricting plans are subject to scrutiny under Article I, Section 2 of the United States Constitution itself.
Turning then first to the question of the validity of Nebraska's legislative redistricting plan, the United States Supreme Court recently held in the Brown, supra, case that the Equal Protection Clause requires that state legislatures must be apportioned on a population basis and that the state make an honest and good faith effort to construct districts as nearly of equal population as is practical.
The court there recognized as it had in Reynolds v.Sims, 377 U.S. 533 that `it is a practical impossibility to arrange legislative districts so that each one has an identical number of residents, or citizens, or voters.' Specifically the United States Supreme Court in Brown held that minor deviations from mathematical equality among state legislative districts are insufficient to make out a prima facie case of invidious discrimination under theFourteenth Amendment so as to require those deviations to be justified by the state. The court specifically held: `Our decisions have established, as a general matter, that an apportionment plan with a maximum population deviation under ten percent falls within this category of minor deviations.' The court held that states with deviations below this ten percent figure would not be required to justify these deviations while without saying greater deviations were unconstitutional, the court would require states to justify the reasons for greater disparities. It is our understanding that the legislative reapportionment plan adopted by the Nebraska Legislature provides for a maximum deviation less than ten percent and we would therefore be of the opinion that given the recent Supreme Court holding in Brown, supra, that as such it would pass constitutional review.
With respect to congressional redistricting plans, the Supreme Court in Karcher, supra, suggested that Article I, Section 2 of the United States Constitution required a two prong test any time a state's congressional reapportionment plan failed to achieve absolute mathematical equality. First, the courts must consider whether the population differences among districts could have been reduced or eliminated all together by a good faith effort to draw districts of equal population. The court suggested that parties challenging apportionment legislation must bear the burden of proof on that issue, however, if they could establish that population differences were not the result of a good faith effort to achieve equality, the state must bear the burden of proving that each significant variance between districts was necessary to achieve some legitimate goal.
In the Karcher, supra, case, the State of New Jersey had a maximum variance of 0.6984 percent, however, an alternative plan had been proposed in the New Jersey legislature which would have resulted in a maximum variance of 0.4514 percent.
Given the obvious possibility for adopting a plan which would have resulted in less disparity, the court subjected the State of New Jersey to the second prong of the test, that being requiring them to prove a justification for this variance.
It is our understanding that Nebraska's congressional reapportionment plan did not result in absolute mathematical equality but rather had a population variance of 0.23 percent. It is also our understanding that a plan was proposed which, if it had been adopted, would have resulted in a population variance of considerably less. Therefore, it is apparent from the holding of the United States Supreme Court in Karcher, supra, that it would be necessary for Nebraska to justify the acceptance of a plan resulting in greater disparity.
The United States Supreme Court did go on in Karcher,supra, to list some of the legislative policies which might justify greater variance than would be mathematically possible under alternative plans. These factors included the desire to make districts compact, the desire to respect municipal boundaries, the desire to preserve cores of prior districts, and the desire to avoid election contests between incumbent representatives. The court did not indicate that this was an exhaustive list, but merely examples of the types of legislative concerns which they might find acceptable.
Therefore, if the adoption of the plan actually accepted can be justified on these or other legitimate bases, then we would be of the opinion that the failure of the Legislature to adopt a plan of lesser population variance could be supported and the apportionment upheld. Conversely, if there are no acceptable reasons for adopting the plan chosen and rejecting the plan establishing the smallest possible variance, then it is likely that our apportionment would be rejected.
We hope you will find this information useful in analyzing both Nebraska's efforts to reapportion its Legislature and its congressional districts.
Sincerely, PAUL L. DOUGLAS Attorney General Terry R. Schaaf Assistant Attorney General